United States District Court
Northern District of California

1

2

3

4

5

6

7                                  UNITED STATES DISTRICT COURT

8                             NORTHERN DISTRICT OF CALIFORNIA

9                                      SAN JOSE DIVISION

10

11    INTERIOR GLASS SYSTEMS, INC.,                Case No. 5:13-cv-05563-EJD

              Plaintiff,

12                                                 **ORDER:**

              v.

13                                                 **GRANTING DEFENDANT'S FIRST**
      UNITED STATES OF AMERICA,                    **MOTION FOR PARTIAL SUMMARY**
14                                                 **JUDGMENT;**
              Defendant.

15                                                 **GRANTING IN PART AND DENYING**
                                                   **IN PART PLAINTIFF'S MOTION FOR**
16                                                 **SUMMARY JUDGMENT; AND**

17                                                 **GRANTING IN PART AND DENYING**
                                                   **IN PART DEFENDANT'S SECOND**
18                                                 **MOTION FOR SUMMARY JUDGMENT**

19                                                 Re: Dkt. Nos. 30, 31, 36

20

21         Plaintiff Interior Glass Systems, Inc. ("Interior Glass") filed the instant action against the

22    United States of America (the "Government") seeking the recovery of federal income tax penalties

23    assessed and collected under 26 U.S.C. § 6707A.  Presently before the court are three matters: two

24    motions for partial summary judgment filed by the Government, and one motion for summary

25    judgment filed by Interior Glass.  Dkt. Nos. 30, 31, 36.

26         Federal jurisdiction arises pursuant to 28 U.S.C. § 1346(a)(1).  Having carefully

27    considered the parties' pleadings, supplemental briefing, and the oral argument presented at the

28                                                 1
      Case No.: 5:13-cv-05563-EJD
      ORDER

1      two hearings addressing these matters, the court grant the Government's first Motion for Partial

2      for Summary Judgment, and will grant in part and deny in part the parties' other motions for the

3      reasons explained below.

4      **I.      FACTUAL AND PROCEDURAL BACKGROUND**

5              Interior Glass is a glass-installation company located in San Jose, California, and is owned

6      by Mike Yates.  In 2012, the Internal Revenue Service ("IRS") imposed a $40,000 penalty on

7      Interior Glass for failing to disclose its participation in a "listed transaction" as described in IRS

8      Notice 2007-83.  The facts underlying the penalty are as follows:

9              In 2005, certain insurance brokers began to market a plan they claimed allowed an

10     employer to claim deductions for life insurance premiums paid on behalf of an employee, while

11     the employee would not have to report any compensation income for the premiums paid on his

12     behalf.  One such insurance broker was Lawrence Cronin, who marketed the plan as the Insured

13     Security Program ("ISP").  In 2006, Interior Glass learned of the ISP and began participating in

14     the plan.

15             In October 2007, the IRS targeted programs similar to the ISP and identified them as

16     "abusive trust arrangements."  To regulate such arrangements, the IRS issued Notice 2007-83

17     providing that abusive trust arrangements are transactions identified as "listed transactions" under

18     the Internal Revenue Code.  Notice 2007-83 requires taxpayers participating in a "listed

19     transaction" to disclose their participation in such transaction to the IRS.  A failure to disclose

20     subjects the taxpayer to federal income tax penalties under § 6707A.

21             In light of Notice 2007-83, Cronin recognized the ISP plan would be considered a "listed

22     transaction" subject to the disclosure requirement of the Notice.  Thus, in 2009, Cronin developed

23     a program that he believed would not be subjected to the disclosure requirement.  He founded a

24     tax-exempt business league called the Association for Small, Closely-Held Business Enterprises

25     ("ASBE"), which would offer a group term life insurance plan ("GTLP") to its member-

26     companies/employers.  The ASBE attracted 139 member-companies/employers, including Interior

27     Glass, who joined the ASBE in August 2009 and adopted the GTLP.  The participating companies

28
Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

United States District Court
Northern District of California

1    were told the GTLP was not a "listed transaction," and as such, was not subject to Notice 2007-83.

2    Consequently, Interior Glass did not disclose its participation in the GTLP for the 2009, 2010, and

3    2011 tax years.

4         In March 2011, the IRS interviewed Cronin about the GTLP, obtained documents about

5    the GTLP, and obtained the names of the companies that had joined the ASBE and adopted the

6    GTLP.  Cronin explained to the IRS that the GTLP was a different program than the ISP, and was

7    therefore not subject to Notice 2007-83.  In October 2011, the IRS initiated an audit of Interior

8    Glass.

9         In November 2012, the IRS sent Interior Glass a letter stating that it was imposing

10   penalties under § 6707A because Interior Glass failed to disclose its participation in the GTLP,

11   which it determined was a "listed transaction" subject to the disclosure requirement of Notice

12   2007-83.  Along with the letter, the IRS sent "Form 886A – Explanation of Items" describing the

13   basis for the penalties.  The IRS imposed a $10,000 penalty for each tax year Interior Glass failed

14   to disclose its participation in the GTLP, from 2009 to 2011.  In addition, the IRS imposed a

15   $10,000 penalty for Interior Glass' failure to disclose its participation in the ISP in 2008.  The

16   penalties amounted to $40,000.  In May 2013, Interior Glass paid $40,430.12 in assessed penalties

17   and interest.

18        In June 2013, Interior Glass filed a claim for refund with the IRS, which the IRS denied.

19   Interior Glass then commenced the instant action in December 2013 seeking recovery of the

20   $40,430.12 it paid in penalties and interest.  These motions followed.[1]

21   **II.    LEGAL STANDARD**

22        A motion for summary judgment or partial summary judgment should be granted if "there

23   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

24

25   _____

26   [1] After the motions were filed, the Government withdrew its opposition to Interior Glass' request
     for a refund of the $10,000 it paid as a penalty for the 2008 tax year.  Dkt. No. 63.  Based on the
     concession, Interior Glass is entitled to a judgment in its favor for that amount, and only the
27   penalties assessed for the 2009, 2010, and 2011 tax years remain in dispute for the purposes of this
     order.

28                                          3
     Case No.: 5:13-cv-05563-EJD
     ORDER

law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the burden of proof at trial, the moving party need only point out an absence of evidence supporting the claim; it does not need to disprove its opponent's claim. Id. at 325.

If the moving party meets the initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific materials in the record to show that there is a genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue" for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id. ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

United States District Court
Northern District of California

4

Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

## III.    DISCUSSION

### A.    Overview of IRS Notice 2007-83

A brief overview of Notice 2007-83 is warranted as a precursor to an analysis of the parties' arguments.  Notice 2007-83, entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits," was released on October 17, 2007.  The Notice states that the IRS and Treasury Department "are aware of certain trust arrangements claiming to be welfare benefit funds and involving cash value life insurance policies that are being promoted to and used by taxpayers to improperly claim federal income and employment tax benefits."  The Notice then goes on to state in the background section:

> Trust arrangements utilizing cash value life insurance policies and purporting to provide welfare benefits to active employees are being promoted to small businesses and other closely held businesses as a way to provide cash and other property to the owners of the business on a tax-favored basis.  The arrangements are sometimes referred to by persons advocating their use as "single employer plans" and sometimes as "419(e) plans."  Those advocates claim that the employers' contributions to the trust are deductible under §§ 419 and 419A as qualified cost, but that there is not a corresponding inclusion in the owner's income.
>
> . . . .
>
> Under these arrangements, the trustee uses the employer's contributions to the trust to purchase life insurance policies.  The trustee typically purchases cash value life insurance policies on the lives of the employees who are owners of the business (and sometimes other key employees), while purchasing term life insurance policies on the lives of the other employees covered under the plan.
>
> It is anticipated that after a number of years the plan will be terminated and the cash value life insurance policies, cash, or other property held by the trust will be distributed to the employees who are plan participants at the time of the termination.  While a small amount may be distributed to employees who are not owners of the business, the timing of the plan termination and the methods used to allocate the remaining assets are structured so that the business owners and other key employees will receive, directly or indirectly, all or a substantial portion of the assets held by the trust.
>
> Those advocating the use of these plans often claim that the employer is allowed a deduction under § 419 (c) (3) for its contributions when the trustee uses those contributions to pay premiums on the cash value life insurance policies, while at the same time claiming that nothing is includible in the owner's gross

5

income as a result of the contributions (or, if amounts are includible, they are significantly less than the premiums paid on the cash value life insurance policies). They may also claim that nothing is includible in the income of the business owner or other key employee as a result of the transfer of a cash value life insurance policy from the trust to the employee, asserting that the employee has purchased the policy when, in fact, any amounts the owner or other key employee paid for the policy may be significantly less than the fair market value of the policy. Some of the plans are structured so that the owner or other key employee is the named owner of the life insurance policy from the plan's inception, with the employee assigning all or a portion of the death proceeds to the trust. Advocates of these arrangements may claim that no income inclusion is required because there is no transfer of the policy itself from the trust to the employees.

The Notice also "informs taxpayers and their representatives that the tax benefits claimed for these arrangements are not allowable for federal tax purposes," and "further alerts persons involved with these transactions of certain responsibilities that may arise from their involvement with these transactions."

Importantly, Notice 2007-83 applies to "listed transactions," which are defined as:

Any transaction that has all of the following elements, and any transaction that is substantially similar to such a transaction, are identified as "listed transactions" for purposes of [26 C.F.R.] § 1.6011-4 (b)(2) and [26 U.S.C.] §§ 6111 and 6112, effective October 17, 2007, the date this notice is released to the public.

(1) The transaction involves a trust or other fund described in § 419(e)(3) that is purportedly a welfare benefit fund.

(2) For determining the portion of its contributions to the trust or other fund that are currently deductible the employer does not rely on the exception in § 419A(f)(5)(A) (regarding collectively bargained plans).

(3) The trust or other fund pays premiums (or amounts that are purported to be premiums) on one or more life insurance policies and, with respect to at least one of the policies, value is accumulated:

. . .

(4) The employer has taken a deduction for any taxable year for its contributions to the fund with respect to benefits provided under the plan (other than post-retirement medical benefits, post-retirement life insurance benefits, and child care facilities) that is greater than the sum of the following amounts:

United States District Court
Northern District of California

1    The Notice requires taxpayers to disclose their participation in a "listed transaction" to the

2    IRS.  Those who fail to do so may be subject to a penalty under § 6707A.  The minimum penalty

3    is $10,000.

4    **B.**    **The Constitutional and Related Arguments**

5    The court now addresses the issues raised in the Government's first Motion for Partial

6    Summary Judgment, as well as related issues raised by Interior Glass in its Motion for Summary

7    Judgment.  Dkt. Nos. 30, 31.

8    In its motion, the Government moves for summary judgment on three of Interior Glass'

9    legal arguments: (1) that penalties imposed under § 6707A violate a taxpayer's right to due

10    process, and constitute an unconstitutional taking, (2) that § 6707A is unconstitutionally vague,

11    and therefore void, and (3) that § 6707A penalties cannot be imposed if the taxpayer did not know

12    he or she was participating in a reportable transaction, or relied on competent advice in failing to

13    disclose the participation.  Each of these topics is discussed below.

14    **i.**    **Whether a § 6707A Penalty Violates Due Process and Constitutes a Taking**

15    The Government contends that a penalty imposed under § 6707A does not violate the due

16    process clause of the Fifth Amendment because it is an assessable penalty that is payable upon

17    notice and demand from the Secretary of the Treasury, collected in the same manner as taxes, and

18    is not subject to deficiency procedures.  Penalized taxpayers also have the right to judicial review,

19    as evidenced by this lawsuit.  Furthermore, the Government argues that a § 6707A penalty is not

20    an unconstitutional taking because Congress has been designated the power to "lay and collect

21    taxes."  U.S. Const. art. I, § 8, cl. 1.

22    In response, Interior Glass argues that, while there are limited instances of the

23    Government's "necessity" to collect taxes, there is no such necessity for the imposition of

24    penalties.  Specific to § 6707A, Interior Glass points out that the section provides the IRS with a

25    "more convenient" method to collect the penalty "than the notice and hearing procedure in [26

26    U.S.C.] § 6212."

27    Generally, "[t]he base requirement of the Due Process Clause is that a person deprived of

28

United States District Court
Northern District of California

7

Case No.: 5:13-cv-05563-EJD
ORDER

1    property be given an opportunity to be heard at a meaningful time and in a meaningful manner."

2    Buckingham v. Sec'y of U.S. Dep't of Agr., 603 F.3d 1073, 1082 (9th Cir. 2010) (internal

3    quotations omitted).  However, it is not required "that the notice and opportunity to be heard occur

4    before the deprivation," and "due process does not always require an adversarial hearing, a full

5    evidentiary hearing, or a formal hearing."  Id. (internal quotations and citations omitted).

6          In the context of tax assessments and penalties, "[t]he right of the United States to collect

7    its internal revenue by summary administrative proceedings has long been settled."  Phillips v.

8    Comm'r, 283 U.S. 589, 595 (1931); Todd v. United States, 849 F.2d 365, 369 (9th Cir. 1988)

9    ("Well-settled is the rule that the United States government's revenue requirements justify use of

10   summary procedures in collection of taxes.").  To that end, "the Supreme Court has consistently

11   held that post-deprivation hearings satisfy the demands of due process, when revenue collection is

12   at issue."  Todd, 849 F.2d at 369; Oropallo v. United States, 994 F.2d 25, 31 (1st Cir. 1993) ("[I]t

13   is well settled that post-collection judicial review accords a taxpayer all the process that is due

14   under our tax laws.").  "Accordingly, taxpayers do not have the right to a hearing prior to

15   collection efforts by the IRS."  Id.

16         Here, Interior Glass alleges the IRS notified it in November, 2012, that it would be

17   assessed penalties under § 6707A.  Interior Glass also alleges - and the Government does not

18   dispute - that it paid the penalties and interest and filed a claim for refund on June 26, 2013.  As

19   the above authority demonstrates, the IRS was not required to provide Interior Glass with a pre-

20   assessment hearing, and the simple fact this court is now reviewing the § 6707A penalty subject to

21   Interior Glass' appellate rights forecloses any argument based on a deprivation of due process.

22   See Oropallo, 994 F.2d at 31 ("Both this court and the district court have reviewed the IRS's

23   denial of Oropallo's refund claim and have issued opinions explaining that his claim is barred

24   because it was untimely.  Thus, Oropallo has received the post-collection judicial review to which

25   he was entitled.").

26         As such, the Government is entitled to summary judgment as a matter of law, and its

27   motion will granted with respect to the argument that imposition of the § 6707A penalty violated

28   
Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

8

1   Interior Glass' due process rights or amounted to an unconstitutional taking in violation of the

2   Fifth Amendment.

3                           ii.      **Whether § 6707A is Void for Vagueness**

4          The parties dispute whether § 6707A is unconstitutionally vague.  "The Fifth

5   Amendment's Due Process Clause requires that a penal statute define the criminal offense with

6   sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

7   manner that does not encourage arbitrary and discriminatory enforcement."  Dimaya v. Lynch, 803

8   F.3d 1110, 1112 (9th Cir. 2015) (internal quotations omitted).  "Although most often invoked in

9   the context of criminal statutes, the prohibition on vagueness also applies to civil statutes[.]"  Id.;

10  see Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497-99 (1982)

11  (explaining that while the void for vagueness doctrine applies to civil statutes, the Supreme Court

12  has "expressed greater tolerance of enactments with civil rather than criminal penalties because

13  the consequences of imprecision are qualitatively less severe").

14         In its motion and in opposition to the first motion filed by the Government, Interior Glass

15  argues that § 6707A is void for vagueness because no reasonable person, including the IRS, could

16  know what "substantially similar" means.  It argues that the statute's vagueness allows the IRS to

17  determine that different policy plans are "substantially similar," therefore facilitating the

18  imposition of penalties.  For its part, the Government argues that § 6707A is not unconstitutionally

19  vague since Notice 2007-83 describes a "listed transaction" in detail, and explicitly provides for

20  "substantially similar" transactions, thereby incorporating the definition for that phrase found in

21  26 C.F.R. § 1.6011-4(c)(4).

22         As their arguments demonstrate, the parties' vagueness dispute is focused on the phrase

23  "substantially similar," as incorporated into § 6707A, and whether such phrase is "'so vague and

24  indefinite as really to be no rule or standard at all,' or 'whether a person of ordinary intelligence

25  could understand'" what types of arrangements are "substantially similar" to a "listed transaction."

26  Ai v. United States, 809 F.3d 503, 514 (9th Cir. 2015) (quoting Boutilier v. INS, 387 U.S. 118,

27  123 (1967) and Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 946

28
                                                     9
    Case No.: 5:13-cv-05563-EJD
    ORDER

*United States District Court*
*Northern District of California*

1    (9th Cir. 2013)).  In assessing § 6707A for vagueness, the court is mindful that so long as

2    "substantially similar" is "set out in terms that the ordinary person exercising ordinary common

3    sense can sufficiently understand and comply with, without sacrifice to the public interest," that

4    portion of § 6707A is not unconstitutionally vague.  U.S. Civil Serv. Commn'n v. Nat'l Ass'n of

5    Letter Carriers, AFL-CIO, 413 U.S. 548, 579 (1973).

6           Here, the phrase "substantially similar" appears in §6707A(c)(2), which section defines a

7    "listed transaction" as "a reportable transaction which is the same as, or substantially similar to, a

8    transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of

9    section 6011."  This portion of the statute must therefore be read in conjunction with Notice 2007-

10   83, because it is there that the Secretary identified "certain trust arrangements claiming to be

11   welfare benefit funds and involving cash value life insurance policies" as "tax avoidance

12   transactions" and "listed transactions for purposes of § 1.6011-4 (b)(2) . . . and §§ 6111 and

13   6112."  As indicated above, Notice 2007-83 defines a "listed transaction" with four specific

14   elements, and provides that "[a]ny transaction that has all of the [] elements, and any transaction

15   that is substantially similar to such a transaction, are identified as 'listed transactions' . . . ."

16          In turn, § 1.6011-4(b)(2) defines a "listed transaction" as "a transaction that is the same as

17   or substantially similar to one of the types of transactions that the [IRS] has determined to be a tax

18   avoidance transaction and identified by notice, regulation, or other form of published guidance as

19   a listed transaction."  "Substantially similar" is subsequently defined in § 1.6011-4(c)(4) as "any

20   transaction that is expected to obtain the same or similar types of tax consequences and that is

21   either factually similar or based on the same or similar tax strategy," and is illustrated with

22   examples.

23          Given this direction, the court cannot accept Interior Glass' contention that use of the

24   phrase "substantially similar" in § 6707A is "so vague and indefinite" as to provide no standard at

25   all, or that "a person of ordinary intelligence" could not understand if he or she participated in an

26   arrangement "substantially similar" to a "listed transaction."  See Ai, 809 F.3d at 514.  As

27   explained, Notice 2007-83 lists specific elements to which an arrangement can be compared to

28

Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

1    determine whether it is "substantially similar" to a "listed transaction."  For that reason, and

2    contrary to Interior Glass' position, § 6707A does not "effectively require[] the taxpayer [to] guess

3    what arguments (and what revised facts) the IRS might come up with in the future to allege that

4    two different items are 'substantially similar.'"

5           Interior Glass seems to take issue with the lack of preciseness in the definition of

6    "substantially similar" because, in its words, "any low-level IRS employee can decide items are

7    'substantially similar' and impose the penalties."  Interior Glass also speculates the IRS itself

8    could not determine whether the GTLP was subject to penalty given the delay between its receipt

9    of information and the issuance of a penalty notice.  The court observes, however, that whether a

10   statute is void for vagueness does not turn on whether the IRS applies or interprets § 6707A

11   consistently, or how long it takes an agency to render a penalty decision.  See id. ("[T]he question

12   is not whether the government applied or interpreted FICA consistently.").  Moreover, a statute

13   need not define every factual scenario that falls within its purview in order to withstand a

14   vagueness challenge.  See Boyce Motor Lines v. United States, 342 U.S. 337, 340 (1952).  Indeed,

15   there are good reasons for such specificity to be absent here, given the creativity a taxpayer may

16   employ in an effort to circumvent the statute.

17          In sum, Interior Glass' arguments are misplaced because the language of § 6707A is

18   sufficiently to satisfy the more tolerant standard applied to statutes providing only for civil

19   penalties.  Vill. of Hoffman Estates, 455 U.S. at 498-99.  The Government's motion as to this

20   issue will therefore be granted, and Interior Glass' motion will be denied.

21                    **iii.    Whether Knowledge or Advice is Relevant to a § 6707A Penalty**

22          The Government argues in its motion that § 6707A allows for a strict liability penalty, and

23   contends that whether Interior Glass' failure to report was not willful or knowing, or was based on

24   the advice of tax professionals, is irrelevant.  In response, Interior Glass argues that a strict

25   liability penalty is unconstitutional because it punishes taxpayers who are otherwise unaware of

26   participation in a reportable transaction.  As a corollary argument, Interior Glass argues "[i]t has

27   long been recognized that even if the statute is silent, a penal statute implies a requirement of mens

28
11
Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

1  rea."

2       Initially, the court must agree with the Government that a § 6707A provides for a strict

3  liability penalty. It notably states that "[a]ny person who fails to include on any return or

4  statement any information with respect to a reportable transaction which is required . . . to be

5  included with such return or statement *shall* pay a penalty . . . ." 26 U.S.C. § 6707A(a) (emphasis

6  added). In addition, the definition of "substantially similar" in § 1.6011-4 (c)(4) specifies that

7  "[r]eceipt of an opinion regarding the tax consequences of the transaction is not relevant to the

8  determination of whether the transaction is the same as or substantially similar to another

9  transaction."

10      However, the characterization does not mean the court must find that § 6707A is

11  constitutionally infirm, because Interior Glass has not produced authority which requires such a

12  result. Interior Glass' citation to cases calling for the implication of some form of scienter into

13  criminal statutes, such as United States v. X-Citement Video, 513 U.S. 64 (1994) and United

14  States v. United States Gypsum Co., 438 U.S. 422 (1978), are plainly distinguishable from the

15  instant factual circumstances and unpersuasive on that basis. Similarly, the footnoted statement

16  from National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566, 2596 n. 9 (2012),

17  and the intellectual debate over whether a particular payment requirement constitutes a tax or a

18  penalty, is inapplicable here. Not only does this case not implicate that issue, but there is no

19  evidence the § 6707A penalty is the type of criminal fine referenced in the statement cited by

20  Interior Glass.

21      Based on this discussion, the court concurs with the Government's position that Interior

22  Glass' state of mind or any advice it received are irrelevant to the imposition of a § 6707A

23  penalty. Accordingly, the Government's motion will be granted as to this issue.

24      **C.    The Penalty Assessed to Interior Glass**

25      With the constitutional arguments decided, the court examines the parties' arguments

26  concerning the § 6707A penalty assessed to Interior Glass. This issue is addressed in the

27  remaining portion of Interior Glass' summary judgment motion and in the second Motion for

28
Case No.: 5:13-cv-05563-EJD
ORDER

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Partial Summary Judgment filed by the Government.  Dkt. Nos. 31, 36.

2          While Notice 2007-83 lists four elements to a "listed transaction," the parties only dispute

3    the first element.  Thus, the primary question is whether the GTLP involves a "trust or other fund

4    described in § 419(e)(3) that is purportedly a welfare benefit fund."

5                    **i.      Whether the GTLP is a Trust**

6          Notice 2007-83 does not provide a definition for a "trust."  Black's Law Dictionary defines

7    a "trust" as "[t]he right, enforceable solely in equity, to the beneficial enjoyment of property to

8    which another person holds the legal title; a property interest held by one person (the trustee) at

9    the request of another (the settlor) for the benefit of a third party (the beneficiary)."  TRUST,

10   Black's Law Dictionary (10th ed. 2014).

11         In its motion, Interior Glass argues the GTLP does not involve a trust arrangement.

12   Instead, Interior Glass states that it joined an established business league, ASBE, that was tax-

13   exempt under § 501(c)(6) of the Internal Revenue Code, and that through this arrangement the

14   ASBE controlled the insurance policies; no single member could control the money in the ASBE.

15   In response, the Government acknowledges the GTLP involved a § 501(c)(6) association rather

16   than a trust.  Given the parties seemingly consistent positions on the issue, the court finds the

17   GTLP does not constitute a trust for the purposes of Notice 2007-83.

18                   **ii.     Whether the GTLP is an Other Fund Described in § 419(e)(3)**

19         Since it is not a trust, the court turns to whether the GTLP involves an "other fund

20   described in § 419(e)(3) that is purportedly a welfare benefit fund."

21         "The term 'welfare benefit fund' means any fund - (A) which is part of a plan of an

22   employer, and (B) through which the employer provides welfare benefits to employees or their

23   beneficiaries."  26 U.S.C. § 419(e)(1).  In addition:

24                 The term "fund" means -

25                 (A)  any organization described in paragraph (7), (9), (17) or (20) of
                   section 501(c),
26
                   (B)  any trust, corporation, or other organization not exempt from
27                 the tax imposed by this chapter, and

28
                                                    13
     Case No.: 5:13-cv-05563-EJD
     ORDER

(C)   to the extent provided in regulations, any account held for an employer by any person.

26 U.S.C. § 419(e)(3).

In its motion, Interior Glass argues that since the ASBE is a § 501(c)(6) organization, it is not covered by subsection (A) of § 419(e)(3). The Government acknowledges this fact. In addition, Interior Glass and the Government concur that the GTLP seeks tax deductions under § 79 of the Internal Revenue Code, not § 419. Accordingly, the court finds that the GTLP, strictly speaking, does not involve the type of "other fund" described in § 419(e)(3) that is purportedly a "welfare benefit fund."

### iii.      Whether the GTLP is "Substantially Similar" to a "Listed Transaction"

Given the GTLP is neither a trust nor an "other fund," the first element of what constitutes a "listed transaction" is not directly satisfied. However, as suggested within the discussion of the parties' constitutional arguments, the Government contends the GTLP is nonetheless subject to Notice 2007-83 because it is "substantially similar" to a "listed transaction."

Again, an arrangement is "substantially similar" to a "listed transaction" if it "is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy." 26 C.F.R. § 1.6011-4(c)(4). The phrase "must be broadly construed in favor of disclosure." Id. "[A] transaction may be substantially similar to a listed transaction even though it involves different entities or uses different Internal Revenue Code provisions." Id.

In its motion, the Government argues the GTLP is a "listed transaction" because it is expected to obtain the same tax consequences as such an arrangement. It contends that the tax consequences of the GTLP were the same as those of its predecessor, the ISP: under both plans, Interior Glass deducted its contributions to the arrangement while Yates received economic benefits (that is, the accumulated value of the life insurance policies, and the value of the current death benefit coverage), but he did not report the contributions as taxable income. The Government also argues the GTLP and ISP are similar in the following ways: (1) the language of

United States District Court
Northern District of California

14

1    both plans are similar, except that the term "Trust" in the ISP plan document was replaced by the

2    term "Association" in the GTLP plan document; (2) both plans had the same "plan administrator;"

3    (3) like the ISP, the GTLP purported to provide "welfare benefits," or group-term life insurance;

4    and (4) the insurance policy employed by the GTLP was the same policy that had been used by the

5    ISP, a cash value life insurance policy No. xxxxx619V.  The Government therefore surmises that

6    since the GTLP was expected to obtain the same tax consequences as the scheme described in

7    Notice 2007-83, it is "substantially similar" to a "listed transaction" such that it was subject to the

8    disclosure requirement of the Notice.

9         In response, Interior Glass argues the Government has failed to show that the first element

10   of a "listed transaction" has been met.  It argues that Notice 2007-83 involved a trust that was

11   controlled by a single employer, and that this type of control was critical to finding that such

12   transaction was an abusive trust arrangement.  Interior Glass explains that in a single-employer

13   arrangement, the single employer has complete control of the trust and the life insurance policy; as

14   such, the single employer could obtain the economic value of the policy that had been established,

15   in part, by the employer's payment of the premium.  According to Interior Glass, the GTLP, in

16   contrast, was an insurance plan offered by the business league composed of 139 members.  Due to

17   the existence of a multi-member business league, no single member could control the league or

18   obtain any cash value of the life insurance policies.

19        To support the contention that the GTLP is "substantially similar" because of its tax

20   consequences, the Government relies on certain facts that Interior Glass does not convincingly

21   dispute.  First, Interior Glass admits that the ABSE used payments from Interior Glass to pay

22   premiums on a cash value life insurance policy in 2009, 2010 and 2011.  Dkt. No. 45, at ¶ 13.

23   Second, Interior Glass admits that it sought to deduct the payments it made in connection with the

24   GTLP on its tax returns for those years.  Id. at ¶ 14.  Third, Interior Glass admits that its owner,

25   Yates, was covered by a life insurance policy for 2009, 2010,and 2011, that he paid only part of

26   the premiums for those policies, and did not report any of the payments made by Interior Glass as

27   taxable income on his tax returns.  Id. at ¶ 15.

28

15

Case No.: 5:13-cv-05563-EJD
ORDER

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    Based on these admitted facts, the court finds that the GTLP is "substantially similar" to a

2    "listed transaction," as that phrase is defined in § 1.6011-4(c)(4).  Much like the arrangement

3    described in the background section of Notice 2007-83, Interior Glass - the employer - made

4    payments to the ABSE which were then used to purchase a cash value life insurance policy for

5    Yates.  Interior Glass then sought to deduct its contributions to the policy, while Yates did not

6    declare any of the payments made by Interior Glass on his tax returns.  The GTLP, therefore, was

7    "expected to obtain the same or similar types of tax consequences" as a "listed transaction," and is

8    "factually similar" to a "listed transaction."  The fact that the GTLP is not controlled by a single

9    employer is not a distinction that makes a difference under these circumstances.

10   While it is true the GTLP is not a trust in the classic sense, or an "other fund described in §

11   419(e)(3)," it is substantially similar to the "listed transaction" described in Notice 2007-83.

12   Accordingly, there is no genuine issue of material fact that Interior Glass was required to disclose

13   its participation in the GTLP for the years 2009 through 2011, but did not do so.  To that extent,

14   the Government's second Motion for Partial Summary Judgment will be granted, and Interior

15   Glass' cross-motion will be denied.

16   **IV.    ORDER**

17   Based on the foregoing:

18   1.    The Government's first Motion for Partial Summary Judgment (Dkt. No. 30) is

19   GRANTED.

20   2.    Interior Glass' Motion for Summary Judgment (Dkt. No. 31) is GRANTED IN

21   PART and DENIED IN PART.  The motion is GRANTED to the extent it seeks recovery of the

22   $10,000 penalty it paid for 2008.  It is DENIED on all other grounds.

23   3.    The Government's second Motion for Partial Summary Judgment is GRANTED IN

24   PART and DENIED IN PART.  The motion is DENIED to as to the $10,000 penalty paid by

25   Interior Glass in 2008.  It is GRANTED on all other grounds.

26   Judgment will entered in favor of Interior Glass consistent with this order.  Since that

27   result constitutes a final resolution of this action, all other hearing dates and deadlines are

28

16

Case No.: 5:13-cv-05563-EJD
ORDER

1  VACATED.  The Clerk shall close this file.

2

3          **IT IS SO ORDERED.**

4  Dated:  August 12, 2016

5  _____
   EDWARD J. DAVILA
6  United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

Case No.: 5:13-cv-05563-EJD
ORDER